UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03777-RGK (SSx) | Date | July 9, 2010 |
|---|---|---|---|
| Title | *OMNIPOINT COMMUNICATIONS, INC. v. CITY OF HUNTINGTON BEACH, et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**   (IN CHAMBERS) Order re: Plaintiff's and Defendants' Cross Motions for Summary Judgment (DE 43 and DE 58)

I. **INTRODUCTION**

Plaintiff T-Mobile West Corporation ("Plaintiff") is a provider of wireless telecommunications services. Plaintiff alleges that Defendants the City of Huntington Beach (the city) and the City Council (collectively, "Defendants") have violated the Telecommunications Act of 1996 ("TCA," or the "Act") by preventing Plaintiff from constructing two wireless communication antennas within the city limits. Before the Court is Plaintiff's and Defendants' cross Motions for Partial Summary Judgment. The Court consolidates the Motions for the purpose of this Order. For the reasons stated below, the Court **DENIES** Defendants' Motion for Partial Summary Judgment and **GRANTS** Plaintiff's Motion for Partial Summary Judgment, subject to the limitations set forth in detail below.

II. **FACTUAL BACKGROUND**

Although each party describes the fact from its own point of view, the Court need not verify all factual details for the purpose of this Order. The following facts are alleged by both parties in their respective motions for summary judgment (and are similar to those the Court relied on in ruling on Defendant's Motion to Dismiss and Plaintiff's Application for Preliminary Injunction). The Court need only rely on these undisputed facts:

On July 24, 2007, Plaintiff submitted two applications to the city seeking authorization to construct two "monopalm wireless telecommunications facilities" ("antennas") within the city limits at 16600 Saybrook Lane in Harbour View Park ("Harbour View") and 5741 Brighton Drive ("Brighton"). The City Council approved the permit applications on August 14 and September 7, 2007. Since the antennas were to be located on land that belongs to the city, Plaintiff and the city negotiated and entered into two Site License Agreements for each antenna locations, according to which the city agreed to allow Plaintiff place the antennas on the City's land in return for certain contractual considerations and subject to certain contractual limitations, none of which are relevant to the issues before this Court on this Motion. The parties finalized and signed the Site License Agreement on or about January 20, 2009, at a publicly noticed hearing, during which the City Council unanimously approved the agreement by a vote of 7 to 0.

In addition to obtaining permits for the wireless antennas and entering into the Site License Agreements, the city required Plaintiff to obtain building construction permits for each facility ("building permits"). The application form for the building permits prompted Plaintiff to report "total construction value" for each site. Without seeking clarification as to what comprised "total construction value" or the purpose of the inquiry, Plaintiff reported $80,000.00 on each form. The city approved the building permits, and Plaintiff began construction of the Harbour View site antenna.

About 2 weeks after Plaintiff had started building the Harbour View site antenna, a number of local residents appeared at the construction site and objected to the project. It appears that most of those citizens were concerned with the environmental effect of the antenna, especially since an elementary school is located near the Harbour View location. Eventually, the objections gave way to serious protests, and the residents physically obstructed Plaintiff's access to the construction site with their bodies and vehicles. Faced with fierce–and apparently unexpected–opposition from the residents, the city asked Plaintiff to voluntarily halt construction until the matter could be discussed with the residents at a City Council meeting. Plaintiff agreed.

On April 23, 2009, the city held a public hearing, which Plaintiff as well as about 200 residents of the city attended. During the meeting, the residents' objections grew even more intense, and the residents did not allow Plaintiff's representatives to voice their opinion. Again, the parties agreed to halt the construction project to give the City Council and the residents some time to deal with the controversy.

The parties met on the following day. This time, the city representatives asked about the total construction cost of the two antennas. Plaintiff responded that each antenna would cost about $200,000.00 to build. According to Plaintiff, this figure includes all construction costs for the antenna whereas the $80,000.00 "total construction value" figure reported on the building permit form does not. The parties dispute the difference between "total construction cost" and "total construction value," but the difference is immaterial to the Court's decision on this Motion.

Once Plaintiff revealed the total construction value, the city informed Plaintiff of the existence of Measure C for the first time. Measure C is codified as Section 612 of the City Charter. (Yamaguchi Decl. Ex. A.) It states in pertinent part,

> [No] structure costing more than $100,000.00 may be built on or in any park or beach or potion thereof . . . unless authorized by the affirmative votes of at least a majority of the total membership of the City Council and by the affirmative vote of at least a majority of the electors voting on such proposition at a general or special election at which such proposition is submitted.

The city informed Plaintiff that since the total construction cost for the two antennas exceeds $100,000.00, the city was unable to authorize the construction of the antennas. Instead, the city required Plaintiff to obtain voter approval before building the antennas. In order for Plaintiff to satisfy the requirements of Measure C, Plaintiff must either finance a special election at costs exceeding $200,000.00 or wait until the next general election to put the construction of the two antennas up for a vote for a small fee.[1]

On April 27, 2009, the city held another City Council meeting to discuss "the status of the License Agreement with [Plaintiff]." (Yamaguchi Decl. Ex. G at 18.) Twenty-one residents spoke against the construction of the antenna at the Harbour View location during the public comment period of the meeting. The majority of comments reflect concerns with the environmental effects of the antennas on the residents in general and the health of the children who attend the local elementary school nearby in particular. At the meeting, the City Council voted–once again unanimously–to "renegotiate the existing license agreement with [Plaintiff]." Plaintiff has not been allowed to resume construction of the antennas since then.

### III. JUDICIAL STANDARD

---

[1] The cost of obtaining voter approval is also in dispute. Plaintiff argues that in addition to the cost of putting the issue up for a vote, it has to incur significant campaign expenditures. Defendants disagree. The Court need not resolve the issue for the purpose of this Order.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Upon such showing, the court may grant summary judgment "on all or part of the claim." Fed. R. Civ. P. 56(a)-(b).

To prevail on a summary judgment motion, the moving party must show that there are no triable issues of material fact as to matters upon which it has the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the non-moving party's case. *See id.* at 326.

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed. R. Civ. P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324.

### IV.     DISCUSSION

To the extent that Measure C frustrates congressional intent by impeding the substantive requirements of the Act, it is preempted. In particular, the Act requires that local governments process an application for permit to install a wireless antenna within a "reasonable period" and explain the reasons for denial of an application "in writing" that is "supported by substantial evidence." 47 U.S.C. § (c)(7)(B)(ii)-(iii). Plaintiff submitted two applications for wireless antennas in July 2007. It has been more then three years, therefore, since Plaintiff has applied for the permits, and to this date, Plaintiff has not been given a definitive answer on whether it may or may not build the antennas.

Defendant argues that Plaintiff must submit the matter for the vote of the electorate and depending on the outcome, it will be given a definitive answer on its applications. Yet the proposed election will not provide "substantial evidence" "in writing" as to why the permits may be denied. Measure C provides that the voters shall decide whether any building that costs more than $100,000 is to be built on public land. The city has made no showing, however, that the cost of the construction project has any relevance here. In this light, even if the voters reject the antennas, the result of the election will not give this Court any means to determine what "substantial evidence" supports Plaintiff's decision.

The Court notes that the fundamental problem here is not whether the city conducts an election or not. The problem is that there are no clear and relevant decision making criteria to guide award or denial of permits that would flow from the vote of the people. For example, an ordinance that simply states that the City Council shall vote at on construction projects that cost more than $100,000–without any explanation as to how the project cost should have any bearing on grant or denial of permit–will not likely satisfy the "substantial evidence" requirement of the Act.

Therefore, because there is no showing that the result of the Measure C election can provide substantial reasons for why the permits may be denied, there is no good reasons to prolong the processing of Plaintiff's permits.  Of course, the city council may hold advisory elections (just as it may conduct surveys, take polls, or receive comments) as long as the process does not impede acting on a permit application within a reasonable time or violate other substantive requirements of the Act. But it would not be reasonable to delay Plaintiff's applications for much longer in this particular case. Plaintiff is entitled to a decision on the permits within a reasonable time.

At the same time, the Court notes that the City Council did not have all the facts at the time it initially approved the permits. In particular, Plaintiff did not provide the required information accurately on the forms (for example, that the projects cost as much as 200,000). The City Council was also apparently unaware of the distaste of the citizens for the antennas, especially within an elementary school. And of course, the City Council was not aware that Measure C cannot be relied on as basis for its decision. Therefore, while Measure

C cannot be used as reason for denial of applications, the Court cannot at this time order the city to allow the construction to resume.

In this light, the city must be given a chance to either grant the permits or articulate in writing the bases of denial in a way that comports with the Act. This will serve two purposes. First, it will allow the city to make a decision in light of new facts and developments in this case. Second, it will allow this Court to evaluate the city's decision on a complete record (in case the city denies the applications), which will include the city's reasons for denial in writing.

## V.     **CONCLUSION**

For the reasons stated above, the Court **DENIES** the city's Motion for Partial Summary Judgment and **GRANTS** Plaintiff's Motion for Partial Summary Judgment as detailed above. The Court orders the city to either approve the two projects at issue within 60 days from the date this order is entered on the docket or submit its reasons for denial to the Court in writing. The Court **VACATES** all current dates and schedules and sets a new trial date for **November 9, 2010** and pretrial conference for **October 25, 2010.** Should Plaintiff refuse to accept the city's reasons for denial of applications (in case the city denies the applications), Plaintiff shall file its objections with the Court, in form of a second motion for summary judgment, no later than 10 court days after the day the city's decision is submitted to the Court in writing. Opposition and Reply to said motion shall be due according to the applicable local rules.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | slw |